[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 700.]

WASHINGTON LOCAL SCHOOL DISTRICT, APPELLANT, *v*. BUDGET COMMISSION
OF SCIOTO COUNTY, APPELLEE.

[Cite as *Washington Local School Dist. v. Scioto Cty. Budget Comm.*,
1995-Ohio-299.]

*Taxation—Millage certification—Local school district created in 1938 not entitled
to mandatory minimum inside millage under R.C. 5705.31(D), since it did
not exist in the base years of the mandatory minimum millage.*

(No. 94-866—Submitted May 23, 1995—Decided September 13, 1995.)

APPEAL from the Board of Tax Appeals, Nos. 92-D-548, 92-D-806, 92-D-1274
and 93-D-37.

———————————

{¶ 1} In 1938 the Scioto County Board of Education created the Washington Local School District (formerly known as "Washington Rural School District") from the pre-existing Buena Vista Rural School District, the Nile Township Rural School District, and the Washington Township Rural School District. If these latter three school districts existed today, the Buena Vista district would receive 4.5 mills of mandatory, minimum inside millage under R.C. 5705.31, the Nile Township district 4.2 mills, and Washington Township Rural district 4.1 mills.

{¶ 2} On or about May 12, 1992, the Scioto County Budget Commission ("commission") notified the Washington Local School District ("Washington Local") that it was approved for 4.31 mills of inside mileage for fiscal 1992. Nevertheless, the parties have stipulated that Washington Local has an established need for the tax revenue that 4.5 mills would generate.

{¶ 3} Washington Local, contending that it had a right, as successor to the Buena Vista district, to a 4.5-mills rate, appealed to the Board of Tax Appeals

("BTA"), seeking 4.5 mills of mandatory, minimum mileage. However, the BTA affirmed the commission's order as to the millage certification. The BTA found that Washington Local did not exist in the period in which the mandatory minimum millage allocation was based and that, consequently, Washington Local was not entitled to mandatory minimum millage.

{¶ 4} The cause is now before this court upon an appeal as of right.

———————————

*Means, Bichimer, Burkholder & Baker Co., L.P.A.*, and *Richard W. Ross*, for appellant.

*Lynn A. Grimshaw*, Scioto County Prosecuting Attorney, and *Robert J. Hill,* Assistant Prosecuting Attorney, for appellee.

———————————

**Per Curiam.**

{¶ 5} In *Strongsville Bd. of Edn. v. Lorain Cty. Budget Comm*. (1988), 38 Ohio St.3d 50, 526 N.E. 2d 297, 298, we held that "the minimum levy within the ten-mill limitation is guaranteed for a subdivision by R.C. 5705.31(D) and irreducible unless the subdivision requests a lower rate for the fiscal year in question." We explained why, stating:

"Section 2, Article XII of the Ohio Constitution prohibits taxing any property according to value in excess of one percent of its true value unless the excess tax is approved by a majority of the electors in the taxing district or provided by municipal charter. R.C. 5705.02, in harmony with this provision, limits the aggregate amount of taxes levied on any taxable property in a subdivision to ten mills, the so-called ten-mill limitation. Subdivisions and taxing units may levy millage in addition to this millage only if specifically authorized, *i.e*., by a majority vote of the electorate or by provision in a municipal charter.

"R.C. 5705.31, in pertinent part, provides:

"'The [county budget] commission shall ascertain that the following levies have been properly authorized and, if so authorized, shall approve them without modification:

"'***

"'(D) A minimum levy within the ten-mill limitation for the current expenses and debt service of each subdivision or taxing unit, which shall equal two-thirds of the average levy for current expenses and debt service allotted within the fifteen-mill limitation to such subdivision or taxing unit during the last five years the fifteen-mill limitation was in effect unless such subdivision or taxing unit requests an amount requiring a lower rate. *** "'(E) ***

"'Divisions (A) to (E) of this section are mandatory, and commissions shall be without discretion to reduce such minimum levies except as provided in such divisions. * * *'" *Id.*, 38 Ohio St.3d at 50-51, 526 N.E.2d at 298-299.

{¶ 6} In *Strongsville*, we also noted that the fifteen-mill limitation was in effect only from 1929 through 1933. Thus, subdivisions receiving inside millage in those five years average the annual millage amounts and multiply the average by two thirds. "Unless the subdivision requests an amount requiring a lower rate, this is the millage that a subdivision in existence in those years should receive." *Id.*, 38 Ohio St.3d at 51, 526 N.E. 2d at 299.

{¶ 7} In *Carlisle v. Warren Cty. Budget Comm.* (1992), 63 Ohio St. 3d 478, 588 N.E. 2d 859, we held that a subdivision was not entitled to mandatory minimum inside millage under R.C. 5705.31(D) if it did not exist during the period from 1929 through 1933.

{¶ 8} Washington Local, essentially, contends that it consolidated or merged with the predecessor school districts and, consequently, "existed" in the necessary years. It also argues that it should receive the highest achieved inside millage of the constituent territories. The budget commission responds that

Washington Local did not exist until 1938 and should not receive guaranteed inside millage.

{¶ **9**} Washington Local relies on *Cambridge City School Dist. v. Guernsey Cty. Budget Comm.* (1967), 11 Ohio App. 2d 77, 40 O.O. 2d 239, 228 N.E. 2d 874, affirmed by adopting the syllabus and opinion, *Cambridge City School Dist. v. Guernsey Cty. Budget Comm.* (1968), 13 Ohio St.2d 77, 42 O.O. 2d 226, 234 N.E. 2d 512. In paragraph three of the syllabus, we held that annexation of a part of one school district to another does not prevent the latter school district from receiving the minimum mandatory millage.

{¶ **10**} However, we distinguish *Cambridge*. In *Cambridge*, a portion of the voters in the annexed school district voted affirmatively to propose the annexation to the Cambridge City School District. Acceding to this vote, the Cambridge City School Board of Education approved the annexation and transfer. *Cambridge City School Dist. v. Guernsey Cty. Budget Comm.* (Bd. of Tax Appeals 1967), 13 Ohio Misc. 258, 260-261, 42 O.O.2d 313, 314. Here, however, the Scioto County Board of Education created a new district by combining three existing districts under G.C.4736 (now R.C. 3311.26). See *Kellenberger v. Ross Cty. Bd. of Edn.* (1962), 173 Ohio St. 201, 19 O.O. 2d 10, 180 N.E. 2d 834. G.C. 4736 stated:

"The county board of education may create a school district from one or more school districts or parts thereof, and in so doing shall make an equitable division of the funds or indebtedness between the newly created district and any districts from which any portion of such newly created district is taken. ***" 108 Ohio Laws, Part I, 707.

{¶ **11**} In *Hancock Cty. Bd. of Edn. v. Boehm* (1921), 102 Ohio St. 292, 302-303, 131 N.E. 812, 815-816, we deferred to the wisdom of the General Assembly in distinguishing between creating a new school district under G.C. 4736 and

4

transferring part of a school district to an adjoining district under G.C. 4692. Accordingly, we gave effect to this distinction.

{¶ 12} In *State ex rel. Maxwell v. Schneider* (1921), 103 Ohio St. 492, 134 N.E. 2d 443, paragraph two of the syllabus, a quo warranto action, we stated:

"When, pursuant to the provisions of Section 4736, General Code, a new school district is created by a county board of education by proceedings in conformity with the requirements of the law, and the members of a board of education of a newly-created district are duly appointed and qualified, and such board duly organized as therein provided, the duties and authority of members of a board of education of a former school district which has been absorbed by the creation of a new district are *ipso facto* terminated."

{¶ 13} We explained:

"The contention that the board of education of the former district is not abolished, but continues in existence, merits but little consideration. The statute to which reference has been made clearly authorizes the appointment of a board of education for the newly-created district. The members of the board of education of a district abolished in the creation of a new district have no further duties to perform, and that statute clearly contemplates that such boards shall cease to function. It follows without any specific provision of the statute that the creation of the board of education for a newly-created district, the acceptance and qualification of the members duly appointed thereto, and the organization thereof, as provided by law, *ipso facto* terminate the authority in such new district of the board of education of each district which has been wholly absorbed in the creation of the new district." *Id.*, 103 Ohio St. at 499-500, 134 N.E. at 445.

{¶ 14} Moreover, in 1949 Ohio Atty. Gen. Ops. No. 1070, paragraph one of the syllabus, the Attorney General concluded:

"When a county board of education creates a new local school district pursuant to Section 4831-1 of the General Code [successor to G.C. 4736], the old school district ceases to exist."

{¶ 15} Under the above authority, the three school districts that now comprise the Washington Local School District ceased to exist in 1938, and the Washington Local School District was created. Thus, the Washington Local School District did not exist in the base years for the mandatory minimum inside millage, and the budget commission may not certify guaranteed millage to it. Of course, Washington Local may still receive inside millage under R.C. 5705.04; however, this millage will not be guaranteed.

{¶ 16} Accordingly, we affirm the decision of the BTA because Washington Local did not exist in the base years of the mandatory minimum millage. Consequently, R.C. 5705.31(D) does not guarantee any millage to it.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

WRIGHT and PFEIFER, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 17} I would reverse the decision of the Board of Tax Appeals. Applying the holding of this court in *Cambridge City School Dist.v. Guernsey Cty. Budget Comm.* (1967), 13 Ohio St.2d 77, 42 O.O.2d 226, 234 N.E.2d 512, to the present case, I conclude that the Washington Local School District effectively existed in the base years for the mandatory minimum inside millage and that the budget commission should certify 4.5 mills of  guaranteed millage to Washington Local.

{¶ 18} In *Cambridge* this court adopted the opinion and syllabus of the Court of Appeals for Guernsey County which held that the annexation of a part of one school district to another district does not prevent the school district from receiving the minimum mandatory millage.

**{¶ 19}** In this case, the Buena Vista Rural School District had been guaranteed 4.5 mills. According to *Cambridge*, this minimum amount could not be altered simply because the district became consolidated with two other school districts. Thus, the Washington Local School District—the successor district—should also be entitled to receive the same amount of millage.

**{¶ 20}** The majority's reliance on *State ex rel. Maxwell v. Schneider* (1921), 103 Ohio St. 492, 134 N.E.2d 443, is misplaced. That case merely deals with the duties and authority of a school board that is replaced by a successor school board, and was decided more than a decade before the transition from the fifteen-mill limit to the ten-mill limit.

WRIGHT, J., concurs in the foregoing dissenting opinion.

—————————————